**Antonio Rodriguez SILVA, Appellant,**

v.

**Harlan B. CARTER, as Regional Commissioner, Immigration and Naturalization Service, Southwest Region, San Pedro, California, Appellee.**

No. 18560.

United States Court of Appeals
Ninth Circuit.

Dec. 30, 1963.

Gordon, Kidder, & Price, and Marshall E. Kidder, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Section, and Gordon P. Levy, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and JAMESON, District Judge.

HAMLEY, Circuit Judge.

Antonio Rodriguez Silva brought this action to set aside an order of the Immigration and Naturalization Service (Service), denying Silva's application for adjustment of status to that of a lawful permanent resident. Plaintiff also sought a judicial declaration that he has established his eligibility for, and should be granted, such status. Harlan B. Carter, as Regional Commissioner for the Service at San Pedro, California, was named defendant. District court jurisdiction was asserted under section 10 of the Adminis-

trative Procedure Act,[1] and the Declaratory Judgment Act, 28 U.S.C. § 2201 (1958).

Judgment was entered for defendant and Silva appeals. He contends that administrative officials erred in invoking discretionary powers without first determining his statutory eligibilty for the relief requested; erroneous factual determinations were made amounting to "arbitrariness"; the Regional Commissioner was arbitrary and capricious in considering matters outside the record when invoking his discretionary powers; a fair hearing before the district director was not accorded; and the decision of the agency should be set aside so that new procedures, which became effective on January 22, 1962 could be invoked.

Silva was born in Mexico on February 22, 1908. He first entered the United States from Mexico on March 16, 1918 at El Paso, Texas, although no record of that entry has been found. Silva has had his residence in the United States continuously since that date, but has made several departures and reëntries. He last entered the United States at Nogales, Arizona, on July 3, 1957, after an absence of about eighteen days in Mexico.

Silva is married to a native and citizen of the United States and is the father of nine children who are citizens of the United States. On January 23, 1953, he was convicted in the courts of California on six counts of grand theft, a crime involving moral turpitude. He entered prison in October, 1953, and was released on parole two years later. On June 5, 1958, Silva was sent back to prison as a parole violator, being finally released in October, 1959, after serving his full sentence.

On July 1, 1959, the Service entered an order for Silva's deportation to Mexico. This order has not been executed and is still outstanding.

On January 27, 1961, Silva filed an application under section 249 of the Immigration and Nationality Act (Act),[2] for a record of lawful admission for permanent residence. This relief, if granted, would have given Silva a basis for asking that the order of deportation be set aside.

One of the statutory prerequisites for such relief is that the applicant satisfy the Attorney General that he is not inadmissible under section 212(a) of the Act,[3] insofar as that section relates to criminals, procurers and other immoral persons, subversives, violators of the narcotic laws or smugglers of aliens. As the record then stood, Silva could not meet this requirement, as his previous conviction of a crime involving moral turpitude rendered him inadmissible under section 212(a) (9).

There is, however, a procedure under which certain otherwise eligible aliens who are inadmissible under paragraphs (9), (10) or (12) of section 212(a) of the Act, may request a waiver of such ground of inadmissibility pursuant to the provisions of section 5 of the Act of

---

1. 60 Stat. 243, 5 U.S.C. § 1009 (1958).

2. 72 Stat. 546, 8 U.S.C. § 1259 (1958). This statute reads:

   "A record of lawful admission for permanent residence may, in the discretion of the Attorney General and under such regulations as he may prescribe, be made in the case of any alien, as of the date of the approval of his application or, if entry occurred prior to July 1, 1924, as of the date of such entry, if no such record is otherwise available and such alien shall satisfy the Attorney General that he is not inadmissible under section 212(a) insofar as it relates to criminals, procurers and other immoral persons, subversives, violators of the narcotic laws or smugglers of aliens, and he establishes that he—

   "(a) entered the United States prior to June 28, 1940;

   "(b) has had his residence in the United States continuously since such entry;

   "(c) is a person of good moral character; and

   "(d) is not ineligible to citizenship."

3. At the time of these proceedings section 212(a) (9) of the Act was 66 Stat. 182, 8 U.S.C. § 1182(a) (9) (1958). On September 26, 1961, this section was amended by 75 Stat. 655, 8 U.S.C. § 1182(a) (9) (Supp. IV 1963).

September 11, 1957, now section 212(g) of the Act.[4] This procedure is provided for in 8 C.F.R. § 249.1, as amended.[5] Seeking to take advantage of this procedure in conjunction with his application under section 249 of the Act, Silva requested a waiver of section 212(a) (9) on February 16, 1961.

As stated in section 212(g), the only aliens who may obtain such a waiver are those who bear an indicated relationship to a United States citizen, or to an alien lawfully admitted for permanent residence, and who fulfill other conditions specified in the statute, to be discussed below. Silva met this initial relationship requirement because he was the husband and father of citizens of the United States.

Two other conditions had to be met in order to obtain a waiver under section 212(g). *First*, it was necessary for Silva to establish to the satisfaction of the Attorney General that (a) his exclusion would result in extreme hardship to his wife or children, and (b) his admission would not be contrary to the national welfare, safety or security of the United States. *Second*, it was necessary for the Attorney General, in his discretion, to consent to the waiver.[6]

The application made under section 249, and the related request for waiver of section 212(a) (9) came before District Director George K. Rosenberg for consideration. Counsel for Silva requested an opportunity to present oral testimony and this was granted. On the basis of

4. During the relevant time, section 5 of the Act of September 11, 1957, 71 Stat. 640, 8 U.S.C. § 1182b (1958) read:
"SEC. 5. Any alien, who is excludable from the United States under paragraphs (9), (10), or (12) of section 212(a) of the Immigration and Nationality Act, who (A) is the spouse or child, including a minor unmarried adopted child, of a United States citizen, or of an alien lawfully admitted for permanent residence, or (B) has a son or daughter who is a United States citizen or an alien lawfully admitted for permanent residence, shall, if otherwise admissible, be issued a visa and admitted to the United States for permanent residence (1) if it shall be established to the satisfaction of the Attorney General that (A) the alien's exclusion would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, or son or daughter of such alien, and (B) the admission to the United States of such alien would not be contrary to the national welfare, safety, or security of the United States; and (2) if the Attorney General, in his discretion, and pursuant to such terms, conditions, and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa and for admission to the United States."
This section was repealed by 75 Stat. 657, enacted on September 26, 1961. At the same time, however, virtually identical provisions were enacted as section 212(g) of the Act, 75 Stat. 655, 8 U.S.C. § 1182(h) (Supp. IV 1963). Hereinafter we will refer to this section as 212(g).

5. When taken advantage of by Silva on February 16, 1961, the applicable part of 8 C.F.R. § 249.1 was in the following form:
"§ 249.1 *Application.* Any alien who believes that he meets the eligibility requirements enumerated in section 249 of the act shall apply on Form I-485 to the district director having jurisdiction over his place of residence. *An otherwise eligible alien who is inadmissible under paragraphs 9, 10, or 12 of section 212(a) of the Act may be granted a waiver of those enumerated grounds of inadmissibility pursuant to the provisions of section 5 of the Act of September 11, 1957, in a proceeding under this part.* The applicant shall be notified of the decision and if the application is denied of the reasons therefor and of his right to appeal in accordance with the provisions of part 103 of this chapter." (Emphasis added.) (23 Fed.Reg. 6545 (1958), as amended 23 Fed.Reg. 9124 (1958), 24 Fed.Reg. 2584 (1959), and 24 Fed.Reg. 4906 (1959).)
This regulation has been amended twice since that date, although it has not been changed in substance. 8 C.F.R. § 249.1-249.2 (Supp. 1963).

6. Section 212(g) provides for the Attorney General's consent "to the alien's applying or reapplying for a visa and for admission to the United States." With regard to aliens, such as Silva, already resident in the United States, this provision has been administratively construed as requiring the discretionary consent of the Attorney General to the waiver. Appellant does not contend otherwise.

this testimony and exhibits offered at the same time, and on the basis of the application and request and the documents submitted in support of them, the district director, on June 23, 1961, denied the request for waiver. The district director also, and necessarily in view of the denial of the request for waiver, denied the application under section 249 for a record of lawful admission for permanent residence.

These orders are set out at the end of a twenty-five page document in which the district director discussed the issues of fact and law. Indicating his reasons for denying the request for waiver, the district director first held that Silva had failed to establish that his exclusion from the United States would result in extreme hardship to his wife or children. This official further held that even if Silva were able to meet this statutory eligibility requirement of extreme hardship, the favorable exercise of the Attorney General's discretion is not warranted. The district director based this conclusion on his evaluation of the nature and extent of Silva's political activities, and his marital and extra-marital relations.

Silva appealed from these orders to the acting regional commissioner, Southwest Region. On December 4, 1961, the regional commissioner entered an order denying the application and dismissing the appeal.[7] On the question of whether Silva had met the statutory eligibility requirement of extreme hardship, the regional commissioner found contrary to the district director. But the regional commissioner held, as had the district director, that Silva does not merit the favorable exercise of discretion of the Attorney General, which is a requisite to the granting of a waiver under section 212(g).[8]

It will be noted that, in denying the request for waiver, neither the district director nor the regional commissioner determined whether Silva met the second statutory eligibility requirement, i. e., that his admission be not contrary to the national welfare, safety, or security of the United States. Silva argues that the failure to make this determination constitutes error, requiring that the order be set aside.

The lack of an express ruling as to this eligibility requirement can mean only one of three things: (1) the regional commissioner assumed that Silva did not meet this eligibility requirement; (2) the commissioner assumed that Silva did meet this requirement; or (3) the commissioner made no assumption or sub silentio ruling whatever concerning that requirement.

Nothing contained in the regional commissioner's decision indicates that he assumed that Silva did not meet this requirement, and Silva makes no such contention. That no such assumption was made is also indicated by the fact that the commissioner dealt with and determined the matter of discretion. But if, contrary to all indications, the regional commissioner did make an assumption adverse to Silva as to the second eligibility requirement, that would not be prejudicial to Silva unless it somehow could have affected the exercise of discretion vested in the Attorney General.

7. Under Service appeal nomenclature, an order of a district director or special inquiry officer is sustained on the merits by "dismissing" the appeal, rather than by "affirming" the order. This is to be distinguished from judicial appeal nomenclature in which "dismissal" indicates rejection of an appeal on procedural or jurisdictional grounds without reaching the merits.

8. In explanation of this ruling the regional commissioner stated:

"Upon consideration and review of the entire record it is concluded that the applicant does not merit the exercise of the discretion contained in Section 5 of the Act of September 11, 1957. His extramarital relations, his several marriages and divorces, his conviction for grand theft and subsequent reincarceration as a parole violator, his most recent trial for vote fraud which, although ending in acquittal, when considered with the unfavorable aspects of his political activities, must all enter into this decision."

There is nothing whatever in the regional commissioner's decision, or otherwise, tending to establish that his exercise of discretion was so influenced.

If anything is to be implied concerning the regional commissioner's opinion as to the second eligibility requirement, in view of his silence on the point, it is that he assumed that the requirement had been met. This would explain why the regional commissioner thought it necessary to proceed to a determination of the matter of discretion. The fact that a determination in his favor on the second eligibility requirement was manifested by an unexpressed assumption instead of an express ruling would not prejudice Silva, either as to the determination of that matter or the exercise of the Attorney General's discretion.

If the lack of an express ruling on the second eligibility requirement is to be taken as an indication that no determination whatever was made as to that matter, Silva was likewise not prejudiced. In that event, the matter left to the Attorney General's discretion must have been exercised without reference to the facts concerning eligibility. This is as it should be, whether or not there are express rulings on the questions of eligibility. Had the regional commissioner ruled that Silva met both eligibility tests, he was still empowered to deny the request for waiver in the exercise of discretion. His power could not be less where no such ruling had been made.

Silva calls attention to Jay v. Boyd, 351 U.S. 345, 353, 76 S.Ct. 919, 100 L.Ed. 1242, a case involving the discretionary form of relief known as suspension of deportation. The court there said that eligibility for such relief "is

governed by specific statutory standards which provide a right to a ruling on an applicant's eligibility." [9] Granting the application, by analogy, of this statement to the problem now before us, we do not believe that it helps Silva.

Where discretionary relief is denied on the ground of ineligibility, the ruling is subject to full court review, as in McGrath v. Kristensen, 340 U.S. 162, 169, 71 S.Ct. 224, 95 L.Ed. 173. In order to provide a basis on which there can be such a review, there must be a full and fair hearing as to those matters. But, as we have already stated, there is here nothing to indicate that discretionary relief was denied by the regional commissioner on the ground of ineligibility. Thus Silva could not possibly have been prejudiced by the lack of an express ruling as to eligibility.[10]

We conclude that the regional commissioner did not err in denying the request for waiver on the discretionary ground, without first making an express ruling on the second element of statutory eligibility specified in section 212(g).

On the assumption that the district director or regional commissioner found that Silva failed to establish the second element of statutory eligibility, Silva argues that there has been an erroneous factual determination amounting to "arbitrariness."

As before indicated, we believe such an assumption is unwarranted, and that, in any event, there is nothing to indicate that any such assumption effected the regional commissioner's exercise of discretion. Accordingly, we need not decide whether, if such an assumption were made, it represented such an erroneous

9. The court further said, in Jay v. Boyd, 351 U.S. at page 352, 76 S.Ct. at pages 923–924, 100 L.Ed. 1242:

"We note that petitioner does not suggest that he did not receive a full and fair hearing on evidence of record with respect to his statutory eligibility for suspension of deportation. In fact, petitioner recognizes that the special inquiry officer found in his favor on all issues relating to eligibility for the discretionary

relief and that those findings were adopted by the Board of Immigration Appeals. This favorably disposed of petitioner's eligibility for consideration for suspension of deportation—the first step in the suspension procedure." (Footnote omitted.)

10. Silva cites several other court decisions and agency rulings on this branch of the case, none of which, in our opinion, are in point.

factual determination as to manifest arbitrary action.

■ Silva contends that the regional commissioner considered evidence outside the record of the hearing concerning matters subsequent thereto, in support of his determination that Silva did not merit the favorable exercise of the Attorney General's discretion. Such action, Silva argues, was arbitrary and capricious and amounts to a denial of due process.

In support of this contention Silva refers to one of the reasons given by the regional commissioner for denying the request for waiver on discretionary grounds. This reason was " * * * his [Silva's] most recent trial for vote fraud which, although ending in acquittal, when considered with the unfavorable aspects of his political activities, must all enter into this decision." [11]

The hearing before the district director was completed on April 17, 1961, and the decision of that official was handed down on June 23, 1961. The "vote fraud" trial, to which the regional commissioner referred, was commenced by a state-court indictment returned on July 25, 1961. The criminal action was dismissed on November 15, 1961, after trial and a jury verdict against Silva, on the ground of insufficiency of the evidence. The argument before the regional commissioner was held on November 21, 1961. His decision was rendered on December 4, 1961.

■ There is, as Silva concedes, no express statutory or regulatory grant of any right to a hearing on a request, pursuant to section 212(g), for a waiver of a ground of admissibility. Such a request, and the related application under section 249 for a record of lawful admission for permanent residence, are ordinarily determined on the basis of the request, application, and the documents submitted in support of them.

But, in this case, Silva's attorney requested an opportunity to present oral testimony, and the district director granted the request.[12] However, it was never represented to Silva or his attorney, at that time or later, that the discretionary phase of the agency's action would be based solely on facts developed in the presence of Silva at a hearing before the district commissioner.

That Silva and his counsel understood that the exercise of discretion was not so limited, and acquiesced therein, is demonstrated by the nature of the argument Silva's counsel made before the regional commissioner on the appeal. In the course of that argument counsel made no attempt to confine himself to the record made before the district director at the time of Silva's oral testimony. On the question of hardship Silva's counsel called attention to "some new developments" in the family status since the hearing of April, 1961. With regard to Silva's political activities, which had been referred to by the district director, Silva's attorney told the regional commissioner of events which had occurred in July, 1961. He also called attention to newspaper articles published on October 22 and November 5, 1961, reporting certain political activity.

Concerning the specific item of new information which, Silva contends, the regional commissioner should not have considered, it appears that his attorney fully and voluntarily developed the facts during his argument before the regional commissioner.[13] Silva is not in a posi-

11. All of the regional commissioner's reasons are quoted in note 8.

12. This was pursuant to authority vested in the district director under 8 C.F.R. § 103.2.

13. Silva's counsel told the regional commissioner:
"I will now turn to the political issue which has served as a basis for denying the discretionary waiver to Mr. Silva. There have been new developments since the hearing and you have inquired of me the result of the recent trial concluded in Los Angeles where Mr. Silva was a defendant along with a lady who was City Registrar of Irwindale. Mr. Silva was charged with five counts of violation of the elections code of the state of California, specifically that he had promised

tion to complain because the regional commissioner took note of this and other information which his own counsel supplied concerning events subsequent to the session before the district commissioner. There is no claim that the regional commissioner did not correctly understand the facts concerning the vote fraud trial.

Apart from the manner in which the vote fraud trial information reached the regional commissioner, Silva argues that since the trial resulted in acquittal it should not have played any part in the exercise of discretion in passing upon the waiver request. In our opinion, however, the consideration of this information along with the other factors mentioned by the regional commissioner did not manifest arbitrary and capricious action. At the very least, this development demonstrated that Silva, who was not qualified to vote, still persisted in political activity of a nature which had gotten him into trouble with his parole officers and others over a considerable period of time.

■ At the outset of the proceedings before the district director, Silva's counsel was told to reserve any objections to questions which he might have until all of the oral statements had been received. Silva contends that this ruling denied him a fair hearing. He also argues that the transcript of the proceedings was wholly inadequate.

Counsel for Silva made no objections to questions at the close of the testimony. We are told he could not then have done so because it was a lengthy hearing and he did not have a daily transcript. But Silva had a transcript for the purposes of this court proceeding and still he suggests no objections that he would have made. Accordingly, and entirely apart from the question of whether Silva should have been accorded the right to voice objections during the course of the proceedings, we conclude that no prejudice has been shown. In our opinion the transcript was not so inadequate as to constitute reversible error.

■ Silva asks us to reverse and remand to the agency, so that he can start again before a special inquiry officer under new procedures resulting from a December 16, 1961 amendment of 8 C.F.R. § 242.8(a), effective January 22, 1962.

We do not regard this as a proper ground for reversal. In amending this regulation the agency did not intend to provide a basis for reopening proceedings which had already become final at the agency level. This is made clear in a statement issued in connection with the promulgation of the amendment of § 242.8(a). See 26 Fed.Reg. 12111, December 19, 1961.

The judgment is affirmed.

---

a job to a particular individual in exchange for voting in a certain fashion and that he had aided in registering a person or persons who were ineligible to vote because of lack of the one year residence required in the state of California. The family involved in both instances was named Garza. After a three week trial before a jury which was concluded on or about November 8, Mr. Silva and the lady were found guilty on all counts. Judge Drucker who presided at the trial thereupon set a date for the following week to hear a motion for a new trial. This hearing was held on or about November 15 and the judge first granted the motion for a new trial and then dismissed all of the charges against Mr. Silva and the lady on the ground that there was no evidence sufficient upon which to base a conviction. * * * To complete the picture regarding offense, I have been told that the District Attorney's office is considering an appeal from Judge Drucker's decision dismissing the charges. I am not conversant with any appeal allowable but I mentioned it only because the newspapers have stated that such an action was contemplated."